IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| DAVID BILLINGLEA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO.: |
| v. | ) 3:17-cv-248 |
| | ) |
| SEOHAN AUTO USA CORPORATION, | ) |
| a corporation, | ) |
| | ) JURY DEMAND |
| | ) |
| Defendant | ) |

RECEIVED
2017 APR 24 P 2: 12
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

## COMPLAINT

COMES NOW the Plaintiff, David Billingslea (hereinafter "Billingslea"), by and through his attorney of record, and for his Complaint against the Defendant, Seohan Auto USA Corporation (hereinafter "SAUC"), states as follows:

### I. JURISDICTION

1. The jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331 and 1343. This is a suit authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, including the Civil Rights Act of 1991. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of right

secured by 42 U.S.C. § 2000e et seq. providing for relief against unlawful discriminatory practices involving retention, compensation, and other terms and conditions of employment in failing to remedy systemic employment discrimination on the basis of race (African American) and retaliation.

2. The Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the Civil Rights Act of 1991, 42 U.S.C. 2000e et seq.

3. On July 25, 2016, the Plaintiff timely filed his charge of discrimination within 180 days of occurrence of the last discriminatory act. (See Charge of Discrimination attached hereto as Exhibit A).

4. On January 24, 2017, the Plaintiff received his right to sue. (See "Right to Sue" letter attached as Exhibit B and Post Office envelope attached as Exhibit C).

5. The plaintiff timely filed his lawsuit within 90 days of her receipt of her "Right-to-Sue" letter from the EEOC.

## II. PARTIES

6. The Plaintiff, Billingslea, is over the age of nineteen (19), a citizen of the United States, a resident of the State of Alabama, and employed by the Defendant at all times material herein.

7. The Defendant, SAUC, is a corporation, which does business in this judicial district and division.

8. At all times relevant to this suit, SAUC was the employer for the purposes of Title VII and is an entity subject to suit under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. 2000e et seq.

9. This action is brought within the judicial district wherein the unlawful employment practices were committed, making venue proper under 28 U.S.C. § 1391(b).

### III. FACTUAL ALLEGATIONS

10. The defendant discriminated against Billingslea because of his race, in job assignments, wages, discipline and other terms conditions and privileges of employment.

11. Billingslea is an African American.

12. Billingslea was hired by SAUC as an Engineer, beginning August 17, 2015.

13. After a few months, Supervisor Chung Kim began treating Billingslea different than other (non-black) coworkers.

14. Supervisor Chung Kim demanded Billingslea work unpaid overtime.

15. Supervisor Chung Kim wanted Billingslea to come in early, but would not allow him to clock in.

16. Supervisor Chung Kim told Billingslea if he was not able to come in early, to find another job.

17. Supervisor Chung Kim spoke in a degrading manner toward Billingslea.

18. Billingslea reported this behavior to Human Resources, Aimee Sykes.

19. After the report of racial disparate treatment, Billingslea was placed in isolation from the production team, and not given an assignment for two months.

20. Billingslea constantly asked for work during this time frame, but was told to wait at his desk until he was called upon.

21. Billingslea went to other departments and asked for work and ended up doing assignments for HR and Quality Control.

22. After two months of forced isolation, Billingslea complained of being in isolation and claimed he believed it was in retaliation for his complaint to Chang Rea Cho, Aimee Sykes and Mr. Blake.

23. After these complaints, Plant manager, Chang Rae Cho told Billingslea to clear his desk and report to the second plant to work "PLC

training" which was nothing more than hard physical labor such as working the line, or sweeping trash.

24. Billingslea supervisor at the second plant was Jooseong Na.

25. Again, under Na, Billingslea was asked to work unpaid overtime.

26. Jooseong Na consistent ridiculed Billigslea and referred to him as pyeong-shin ("dumbass") and gae-sae-kki ("Bitch") thinking he could not understand the language due to the fact he was an African American who spoke primarily English.

27. Overtime, Billingslea developed problems in his foot for which he sought medical treatment.

28. Billingslea's doctor told him he needed to periodically sit down.

29. Jooseong Na told Billinglea to go to the hospital and never come back.

30. When Billingslea returned from the hospital, Na posted derrogatory messages on the company's messaging app, and then told him to return to plant manager, Chang Rea Cho.

31. For the next few days. Chang Rea Cho barraged Billinglea with insults calling him, "stupid", say that "you don't have a brain", "did you actually go to college", and other insults.

32. None of the other similarly situated white or Asian employees were spoken to in a derogatory or demeaning manner

33. None of the other similarly situated white or Asian employees were asked to work unpaid overtime.

34. None of the similarly situated employees who had not complained of racial discrimination were placed in isolation.

35. None of the similarly situated employees who had not complained of racial discrimination were forced to go to other departments to beg for work.

36. None of the similarly situated employees who had not complained of racial discrimination were ridiculed or told they should not come back when they were injured.

37. Billingslea complained a second time to Human Resources, and was placed back in isolation with no job assignments.

38. Again, work was available, but Billingslea was not allowed to perform his job duties.

39. Billingslea was required to sit down at his desk and do nothing.

40. No corrective actions were taken for this discriminatory and retaliatory actions.

41. The condition of just sitting at work without job assignments and in isolation became so intolerable, Billingslea was constructively discharged from his position.

42. Seohan tried to state Billingslea was using his cellphone too much, but he was checking the company messaging app, which was required for company supervisors to get in touch with him.

43. Seohan tried to state Billingslea made some miscalculations on a study, which was false.

44. Billngslea was given instructions for the study for which the requirements were changed at a later date.

45. Cho insulted Billingslea for work that had not been completed yet due to the changes in requirements.

46. Billingslea always acted respectful towards his superiors regardless of their behavior.

### IV. CLAIMS

### COUNT I- GENDER DISCRIMINATION- DISPARATE TREATMENT

47. The Plaintiff adopts and re-asserts each and every allegation contained in paragraphs 1-46 as if fully set out herein.

48. The defendant discriminated against the plaintiff because of his race in the terms, conditions, and privileges of employment.

49. The Plaintiff, Billinglea is a member of a protected class as he is an African American.

50. Billingslea was treated different from other similarly situated employees when the Defendant spoke to him in a derogatory or demeaning manner, when he was asked to come in early to work unpaid overtime, when he was placed in isolation after his complaints, when he was forced to go to other departments to beg for work, was ridiculed or told he should not come back when he were injured, when he was given hard labor after his complaints, when he was placed back in isolation after his complaints, when they failed to take his complaints of discrimination seriously, when they retaliated against him for making race discrimination complaints, when he was constructively discharged.

51. As a result of the foregoing, Plaintiff was caused to be injured and damaged: lost wages (both front and back pay); lost benefits; being forced to seek other employment and/or income; to have his career significantly adversely impacted; to suffer constructive termination; and to endure mental anguish, emotional distress, humiliation and shame.

## COUNT II -CONSTRUCTIVE DISCHARGE

52. The Plaintiff adopts and re-asserts each and every allegation contained in paragraphs 1-51 as if fully set out herein.

53. The defendant discriminated against the plaintiff because of his African American race.

52. Upon receiving his complaint of discrimination, the defendant first isolated the Plaintiff, then placed him in hard labor, then placed him back in isolation where he was forced to beg for work assignments, and told to sit at his desk for months until he was called upon.

53. He was ridiculed, harassed, insulted on a regular basis.

54. The conditions at work became so intolerable that a reasonable person would be forced to resign.

54. As a result of the foregoing, Plaintiff was caused to be injured and damaged: lost wages (both front and back pay); lost benefits; being forced to seek other employment and/or income; to have his career significantly adversely impacted; to suffer constructive termination; and to endure mental anguish, emotional distress, humiliation and shame.

## COUNT III-RETALIATION

55. The Plaintiff adopts and re-asserts each and every allegation contained in paragraphs 1-54 as if fully set out herein.

56. The defendant retaliated against the Plaintiff for the Plaintiff's act of objecting to and reporting acts of racial discrimination.

57. When the Plaintiff reported acts of racial discrimination and harassment, the defendant retaliated by first placing him in isolation, then moving him to the second plant where he performed hard labor, then moving him back to isolation, and creating conditions so intolerable that a reasonable person in the position of the Plaintiff would be forced to resign.

58. As a result of the foregoing, Plaintiff was caused to be injured and damaged: lost wages (both front and back pay); lost benefits; being forced to seek other employment and/or income; to have his career significantly adversely impacted; to suffer constructive termination; and to endure mental anguish, emotional distress, humiliation and shame.

## V. DAMAGES

59. The Plaintiff adopts and re-asserts each and every allegation contained in paragraphs 1-58 as if fully set out herein.

60. The Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional and physical pain and anguish, and lost wages (both back wages and future wages), lost benefits, as a consequence of the defendant's unlawful conduct.

73. The Plaintiff is seeking an unspecified amount of compensatory and punitive damages to be determined by the jury.

## VI. PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Enter an Order requiring the defendant to make the plaintiff whole by awarding him reinstatement, lost wages (both back pay and future pay) plus interest, out of pocket expenses, compensatory and punitive damages, loss of benefits, including retirement, pension, seniority, and other benefits of employment.

2. The Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses.

**THE PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Respectfully Submitted,

*Patricia A. Gill*
Patricia A. Gill
GIL047
Attorney for Plaintiff

OF COUNSEL:
PATRICIA A. GILL, P.C.
PO Box 55304
Birmingham, AL 35255
Phone : (205) 307-9555
Facsimile: (205) 930-9809
E-Mail: patriciagill@yahoo.com

**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL:**

Seohan Auto USA Corporation
Care of Registered Agent:
James Kim
6743 Taylor Circle
Montgomery, AL 36117